## BOWER–GEIBEL WHOLESALE CO. et al. v. SEARS–ROEBUCK & CO.

### No. 3676.

District Court, S. D. California, Central Division.

Feb. 24, 1946.

Jerome D. Rolston, of Hollywood, Cal., for plaintiff.

John L. Wheeler, of Los Angeles, Cal., for defendant.

YANKWICH, District Judge (after stating the facts as above).

The above-entitled cause, heretofore tried, argued and submitted, is now decided as follows:

Judgment is ordered for the defendant on its counterclaim in a sum to be computed by counsel, and which is to be the difference between the price paid,—fifty cents per pound—and the value of the rejected candy to the defendant and counterclaimant,—namely, sixty-nine cents per pound.

I am of the view that whether the facts are considered on the basis of the warranty of fitness under the California Code (California Civil Code, Sec. 1735, Subdivision 2) or the express conditions of the purchase order, or whether they be considered as a sale by sample (under Section 1736 of the California Civil Code), the candy rejected was not merchantable and was not up to standard or sample. The evidence is quite clear that the shipment to defendant was part of another and larger shipment by the manufacturer to the plaintiff, that the plaintiff, on the basis of the very deficiencies of which the defendant complained, made complaint to the manufacturer who made a substantial adjustment in the price of the candy. In fact, I am of the view that but for the fact that the plaintiff here felt they were injured by what they called the defendant's waiver, no question would have been raised as to the defendant's claim. It is inconceivable that a wholesaler should receive an adjustment from a manufacturer and not pass it on to

the retailer. It was quite apparent during the trial of the case that the reason that this was not done here was because the plaintiff, and especially Mr. Bower, felt that the adjustment was made after payments by the defendant on certain invoices had been allowed to go through. And plaintiff's chief witness (Mr. Bower) felt that the adjustment did not include the candy sent to the defendant, because the invoices for them had been paid. But the evidence of the witness Pocius, the representative of the manufacturer, who came here from Chicago for the purpose, clearly showed that the adjustment was as to the whole shipment, including the shipment to the defendant. Mr. Pocius testified that, rather than pick up all the invoices, some of which had been paid, in order to make an adjustment, they agreed on two flat rates as a basis for adjustment on the invoices which had not been paid. The attitude of the plaintiff was, no doubt, motivated by the thought that the defendant,—by continuing to accept candy,—after complaint was made, and by endeavoring to remedy the wetness of the candy by exposing it to the open air,—as suggested by the sales representatives of the manufacturer,—had waived the defect and that, thereafter, in accepting the candy, they agreed to take it "as is". But there is no legal foundation for such doctrine. On the contrary, the California law states specifically that acceptance shall not bar the recovery of damages. California Civil Code, Sec. 1769. And the plaintiff had ample notice of the defendant's dissatisfaction with the candy.

■ The defendant's willingness, during the holiday season, to try to remedy the condition, if it could be remedied, is not evidence of waiver. It is merely evidence of a desire to be fair in the matter and minimize damages. The plaintiff was given ample notice of the condition of the candy. That these conditions were real is evidenced by the testimony of the managers of practically every candy department in the various branches of the defendant's stores. Corroboration of this is given by Mr. Pocius, the representative of the manufacturer, who frankly admitted on the stand that they had manufactured this candy without taking into consideration California's climatic conditions. On the basis of this conviction, he made his adjustment with the plaintiff. Corroboration of the condition of the candy is also contained in the testimony of the sales agents of the manufacturer (Ehrhart and Mitchell) who, when the complaints arose, inspected the candy and saw and reported its condition.

■ Plaintiff's attempt to show that the manufacturing concern was, in some way, owned or controlled by the defendant was unsuccessful. There is no relation between the two, except that of manufacturer and supplier, and, even as to that, the relationship is not exclusive. Nor does the evidence warrant the intimation that perhaps the candy became wet or moldy because of the manner in which it was kept. The evidence showed clearly that it was kept in unheated, cool warehouses, and that the stacks were not piled so high as to account for the condition.

Hence the conclusion that the defendant is entitled to recover and that its right of recovery is not barred, either by failure to give proper notice or by waiver of such notice, after it was given.

■ At the same time, I am of the view that, under the provisions of Subsection 6 and 7 of Section 1789 of the California Civil Code, the recovery should be limited to the difference between the price paid and the reduced price of sixty nine cents, which was adopted after the Christmas holidays. It may well be true that, when the sale was made, it was understood that the candy was to be resold at eighty nine cents, that this price had to be cleared with the Office of Price Administration, on the basis of prior sales in Chicago, and that when such an understanding exists, the difference between the resale price and the price paid represents the value to the buyer. However, the evidence is quite conclusive that the reduction to sixty nine cents was unrelated to the quality of the candy. The defendant did not sell any wet or moldy candy.

On the contrary, some of the defendant's managers testified that it is customary to reduce the price of candy after the holidays.

This was more to be expected in the case of a high quality merchandise, of the type which the defendant did not ordinarily sell in its candy department.

Hence the conclusion that the recovery should be limited to the difference between the price paid and the price at which the candy was being sold when the defendant finally gave up the attempt to sell it and stored the balance as unmerchantable.

Because of the earnestness of counsel in the presentation of the case, I have stated these grounds of decision. I may add that I have considered all the other matters, legal and factual, raised by the plaintiff at the trial and in its brief, and I find them not well taken.

Formal findings and judgment in conformity with these views will be prepared by counsel for the defendant under Local Rule No. 7.

* * *  ffi

The above-entitled cause came on for trial on January 9, 1945, before the Hon. Leon R. Yankwich, Judge presiding without a jury, a jury trial having been duly and regularly waived by the respective parties, and the plaintiff and defendant Sears, Roebuck & Co. being present in court and being represented by their respective attorneys of record, and evidence, both oral and documentary, having been offered and received, and the Court being fully advised in the premises, and having filed its opinion setting forth its decision and the grounds thereof, now makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

I. Jurisdiction in this cause is based upon diversity of citizenship. Plaintiff is and was, at the time of the commencement of the above-entitled action, a copartnership doing business in the County of Los Angeles, State of California, and being composed of Earl E. Bower and Walter Hamilton Bower, citizens and residents of the State of California. Defendant Sears, Roebuck & Co. is and was at the time of the commencement of the above-entitled action a citizen and resident of the State of New York. The amount in controversy exceeds the sum of $3000, exclusive of interest and costs.

II. Plaintiff is and for some time prior to the commencement of this action was engaged in the sale of candy and other confections at wholesale in the City and County of Los Angeles.

III. Defendant is and for some time prior to the commencement of this action was engaged in the sale of general merchandise, including candy and confections, at retail throughout the United States, including the City and County of Los Angeles. Defendant, on or about October 20, 1943, purchased by description and by sample from the plaintiff, 28,000 pounds of chocolate pecan fudge candy at 55¢ a pound to be sold by defendant in its retail business to the knowledge of the plaintiff. Plaintiff expressly warranted that said candy would be of merchantable quality and would be in all respects fit and proper for sale in defendant's retail business. Plaintiff further impliedly warranted that such candy would be of merchantable quality, would conform in quality to the samples shown to defendant, and would be otherwise free from defects rendering said candy unsaleable in defendant's retail business.

At the time of said sale, there did not exist in the County of Los Angeles any established custom or usage in the confectionery trade by which plaintiff warranted that said candy was of merchantable quality and fit for sale by defendant in its retail business.

IV. The candy delivered to defendant by plaintiff was not of merchantable quality, was not fit for sale in defendant's retail business, and did not conform in quality or condition to the samples submitted to defendant at the time it purchased the candy. Defendant, upon discovery of the unmerchantable quality and condition of said candy and that it did not conform to the quality of the samples, immediately notified the plaintiff that the candy was of unmerchantable quality and condition and did not conform to the samples. At the time defendant purchased said candy and at the time defendant first gave notice to the plaintiff that such candy was of unmerchantable quality and did not conform to the samples, said candy, if it had been as warranted and if it did conform

to the samples, had a reasonable value to the defendant of 89¢ a pound in its retail business.

V. Delivery of said candy was made to defendant in a number of shipments. Defendant was unable to examine all of the candy to determine whether all of said shipments of said candy would be of unmerchantable quality and would not conform to the samples. At plaintiff's express request, defendant continued to accept further shipments of said candy until the entire 28,000 pounds had been received. Defendant paid the full purchase price of $15,400 for said candy. Defendant continuously advised plaintiff of the unmerchantable quality of substantial portions of the shipments of candy as such shipments were received and further advised plaintiff that it would be required to pay defendant's losses for the unmerchantable portions of said candy. Defendant did not at any time expressly or impliedly agree with plaintiff to discharge plaintiff from its liability in damages to defendant for breaches of said warranty. Defendant stored said candy in a careful and proper manner in its retail stores and sold at retail all of said candy that was of merchantable quality.

VI. Plaintiff purchased said candy sold to defendant from the manufacturer thereof as a part of a larger quality of said candy. Plaintiff and the manufacturer of said candy agreed upon and plaintiff received a substantial settlement from the manufacturer because of the unmerchantable quality of said entire quantity of candy, including that sold to defendant.

VII. Of said 28,000 pounds of candy sold to defendant by plaintiff, 9,620 pounds were of unmerchantable quality, did not conform in quality to the samples, and were unfit for sale in defendant's retail business. Defendant notified plaintiff that said 9,620 pounds of candy were unmerchantable and unfit for sale in defendant's retail business and requested plaintiff to pay for the damage suffered by reason of the breaches of said warranties. At the time defendant notified plaintiff that said 9,620 pounds of candy were unmerchantable, said candy, if it had been as warranted, had a reasonable value to defendant in its retail business of 69¢ a pound.

VIII. Plaintiff sold to defendant other merchandise of a reasonable value of $7,738.99. Defendant has held said sum as an offset to the liability of plaintiff to defendant for the breach of warranties, as aforesaid. Defendant is entitled to offset against said sum of $7,738.99 its damage in the sum of $6,637.80.

IX. Defendant is not barred from asserting its claims for damage for breaches of said warranties by its laches.

X. Defendant did not waive its claims for damage for breaches of said warranties by its acts or conduct at any time or in any manner.

XI. Defendant did not estop itself from asserting its claims for damage for breaches of said warranties by its acts or conduct at any time or in any manner.

XII. Except as herein elsewhere expressly found to the contrary, all of the allegations of defendant's first, second, third and fourth separate and distinct causes of counterclaim are true.

XIII. Except as herein elsewhere expressly found to the contrary, all of the allegations of plaintiff's complaint are untrue.

XIV. Except as herein elsewhere expressly found to the contrary, all of the allegations of plaintiff's reply to the counterclaim are untrue.

### Conclusions of Law

Plaintiff is entitled to a judgment in the sum of $1,101.19, and defendant is entitled to its costs incurred in said action.